| | |
|---|---|
| ALICIA MCKENNEY ON BEHALF OF J.M., her minor child, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>THE TOWN OF NORWAY, Maine, a municipal corporation, , 19 Danforth St. Norway, ME 04268; OFFICER HOLLI PULLEN in her personal capacity, )<br>)<br>*Defendants.* ) | COMPLAINT AND REQUEST FOR JURY TRIAL |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

This is a civil action arising from the unlawful arrest of J.M., a minor, on December 6, 2023, at the Day Treatment Program at Guy E. Rowe Elementary School. Officer Pullen of the Norway Police Department arrested J.M. without probable cause and used unreasonable and unnecessary force to effect the arrest, causing physical and psychological injury to her.

The Defendants are sued under 42 U.S.C. § 1983 for violations of J.M.'s rights under the United States Constitution; for violations of 42 U.S.C. § 12132, the Americans with Disabilities Act ("ADA"), and 29 U.S.C. § 794, the Rehabilitation Act; under 5 M.R.S. § 4682, the Maine Civil Rights Act, for violations of J.M.'s rights under the Maine Constitution; and under the Maine Tort Claims Act for false imprisonment, assault, battery, intentional infliction of emotional distress, and negligence.

1

## Jurisdiction and Venue

1. This Court has jurisdiction to hear the federal civil rights violations in this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)-(4) and supplemental jurisdiction to hear Maine State Constitutional claims and common law claims under 28 U.S.C. § 1367.

2. Venue is proper under 28 U.S.C. § 1391 because the acts giving rise to this lawsuit occurred in the Town of Norway, Maine.

3. The Town of Norway, Maine, was given timely notice of this claim under 14 M.R.S.A § 8107 by letter to Lisa Lombard, Town Clerk for the Town of Norway, Maine, on November 27, 2024.

## Parties

4. The Plaintiff Alicia McKenney is the mother of J.M., who was 10 years old at the time of the occurrence herein; at all times relevant Ms. McKenney has been a resident of the State of Maine.

5. The Town of Norway is a municipal corporation with the right to sue and be sued. It is responsible for the policies and procedures of the Norway Police Department and the officers it employs. The Norway Police Department is responsible for providing law enforcement protection for the Town of Norway.

6. At all times relevant to this complaint the Norway Police Department was bound by the terms of a Memorandum of Understanding ("MOU") it had entered into with Maine School Administrative District # 17 ("MSAD 17") under which it stationed a designated School Resource Officer ("SRO") at Guy E. Rowe Elementary School ("Rowe Elementary").

7. At all times relevant to this complaint, Officer Holli Pullen ("SRO Pullen") was a duly sworn and licensed police officer employed by the Norway Police Department, working as the SRO

stationed at Rowe Elementary and acting under color of state law. She is sued in her personal capacity.

## Facts

### Background

8. At all times relevant to this complaint, J.M. was an elementary school student attending Guy E. Rowe Elementary School ("Rowe Elementary") in MSAD 17, where she received special education services through the school's Day Treatment Program pursuant to an Individualized Education Plan ("IEP") that identified her as a student with an Emotional Disturbance due to a clinical diagnosis of Post Traumatic Stress Disorder ("PTSD").

9. Rowe Elementary's Day Treatment Program is the most restrictive behavioral program in MSAD 17, offering a trauma-informed educational environment with highly trained staff who were well-equipped to deescalate students like J.M. who struggle to regulate their behaviors and emotions due to their disabilities.

10. As the SRO, Officer Pullen's primary role was to facilitate the safe operation of the public school building by enforcing local, state, and federal laws, while upholding the same standards of professional conduct as other Rowe Elementary staff when interacting with students.

### Day Treatment Classroom Incident

11. On December 6, 2023, J.M. became emotionally dysregulated in the Day Treatment classroom and began exhibiting behavioral manifestations of her disability including crying, shouting, screaming, use of inappropriate language, inability to self-soothe, physical outbursts, and hyperventilation.

12. Some time around 2:00 p.m., Officer Pullen overheard a staff member's call seeking Administrative Staff assistance in the Day Treatment classroom and self-dispatched to the

classroom where she was advised that J.M. had hit a staff member, that the staff member was uninjured, and that J.M. was in the process of calming down.

13. J.M. was the only student present in the room, was not a threat to herself or others, had not caused any property damage, and could have safely and appropriately been left alone in the classroom to self-soothe.

14. Officer Pullen asserted her authority over J.M. by barking orders at her, shoving her to the ground, grabbing and twisting her leg, threatening to sit on her, calling for law enforcement back-up, and interfering when well-trained special educators tried to use appropriate blocking, clearing, and soothing techniques de-escalate J.M..

15. After approximately fifteen minutes in the classroom, Officer Pullen became frustrated with J.M. and shouted "What the fuck is wrong with you?" at the ten-year-old, as she grabbed her by the arm and forcefully pinned her against the wall before using pain compliance techniques to force J.M. to the floor while shouting "Get on your face!" and "You are going to stop!"

16. Officer Pullen straddled J.M. as she lay face down on the ground, and contorted the child's arms so that her hands were behind her back and unnaturally level with her shoulders, causing J.M. to scream and cry in pain.

17.  Officer Pullen lowered J.M.'s arms as if to handcuff her and threatened, "If you try to get out [of the hold] I'll move them up again!" before immediately pushing J.M.'s arms up so they were level with her shoulders, causing J.M. to cry out in pain, before she finally lowered J.M.'s arms and handcuffed her tightly.

18. About eight minutes later Officer Pullen's supervisor, who had arrived on scene as "back-up," loosened the handcuffs.

19. J.M. was calm when paramedics arrived, and a single paramedic was sent into the classroom to assess her.

20. Officer Pullen left a calm – but still handcuffed – J.M. in the classroom and commented to the remaining paramedics outside that J.M. "knows what to say to get to me," before beginning to tap the microphone on her bodyworn camera, preventing the remainder of her conversation from being recorded.

21. While J.M. continued talking quietly with the paramedic and other adults inside the Day Treatment classroom, Officer Pullen remained in the hall, and described the situation, admitting that "I [Officer Pullen] could feel the swing coming . . . [J.M.] didn't move, so I shoved her."

22. Thirty minutes after grabbing J.M, shoving her against a wall, pinning her to the ground and handcuffing her, Officer Pullen commented that she would "like to get those [cuffs] off her."

23. When Officer Pullen entered the classroom to remove the cuffs, J.M. was calmly seated on the floor, laughing and doing math problems with the paramedic inside.

24. J.M.'s wrists were visibly red and limp when the cuffs were removed and J.M. grimaced in pain while her hand function was assessed.

25. Once J.M. was cleared by paramedics, she immediately began cleaning up the mess she had made in the Day Treatment classroom, without being asked to do so.

## CLAIMS FOR RELIEF

### Count I
**42 U.S.C. § 1983: Wrongful Arrest in Violation of the Fourth Amendment of the United States Constitution, as Incorporated Against the States through the Fourteenth Amendment**
(Against Officer Pullen, Seeking Damages)

26. Plaintiff, Alicia McKenney, on behalf of J.M., incorporates the allegations contained in paragraphs 1-25, as if fully set forth herein.

5

27. The Fourth Amendment of the United States Constitution, incorporated against the States through the Fourteenth Amendment, guarantees that all people shall "be secure in their person ... against unreasonable seizures."

28. Title 42 U.S.C. § 1983 provides for a cause of action against any person who, acting under color of law, deprives an individual of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

29. It is an established right under the Fourth Amendment that a warrantless arrest may not be affected without probable cause.

30. Officer Pullen was cognizant of this right when she seized J.M. in the Day Treatment classroom.

31. Officer Pullen knew that J.M. was an elementary-school-aged student having a mental health crisis in a special education classroom designed to accommodate students with the most significant behavioral and mental health challenges in MSAD 17.

32. A reasonable and prudent officer would not have concluded on these facts that probable cause existed to believe that J.M. was committing any criminal or civil offense.

33. Officer Pullen, through her words and actions, violated J.M.'s Fourth Amendment right to be free from unreasonable seizures when she arrested J.M. without probable cause.

34. As a result this violation of J.M.'s Constitutional rights, J.M. suffered physical injury, emotional distress, and other damages.

35. WHEREFORE, Ms. McKenney respectfully prays this Honorable Court for a judgement in J.M.'s favor awarding compensatory and punitive damages, plus pre-judgment and post-judgment interest; and attorney's fees pursuant to 42 U.S.C. § 1988.

**Count II**
**42 U.S.C. § 1983: Excessive Force in Violation of the Fourth Amendment of the United States Constitution, as Incorporated Against the States through the Fourteenth Amendment**
(Against Officer Pullen, Seeking Damages)

36. Plaintiff, Alicia McKenney, on behalf of J.M., incorporates the allegations contained in paragraphs 1-35, as if fully set forth herein.

37. The right to be free from the use of excessive force by law enforcement is an established right under the Fourth Amendment of the United States Constitution, incorporated against the States through the Fourteenth Amendment.

38. Officer Pullen was cognizant of this right when she repeatedly shoved J.M., pinned her against a wall, sat on her, painfully contorted her arms, used pain-compliance techniques on her, and handcuffed her for approximately thirty minutes.

39. Officer Pullen's conduct violated J.M.'s Fourth Amendment right to be free from unreasonable seizures.

40. Officer Pullen's use of force exceeded the scope of her discretion and her conduct shocks the conscience.

41. Officer Pullen acted with a reckless disregard for J.M.'s rights.

42. As a result of Officer Pullen's violation of J.M.'s constitutional rights, J.M. suffered physical injury, emotional distress, and other damages.

43. WHEREFORE, Ms. McKenney respectfully prays this Honorable Court for judgement in J.M.'s favor awarding compensatory and punitive damages, plus pre-judgment and post-judgment interest; and attorney's fees pursuant to 42 U.S.C. § 1988.

**Count III**
**Violation of 42 U.S.C. § 12132; 29 U.S. Code § 794 for Deprivation of rights secured by the Americans with Disabilities Act ("ADA") and the Rehabilitation Act**
(Against Officer Pullen, seeking Damages)

44. Plaintiff, Alicia McKenney, on behalf of J.M., incorporates the allegations contained in paragraphs 1-43, as if fully set forth herein.

45. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794 (a).

46. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

47. J.M is a qualified individual with a disability.

48. Officer Pullen mistook the manifestations of J.M.'s disabilities for criminal conduct, leading to her arrest.

49. Officer Pullen failed to accommodate J.M.'s disability throughout the course of her interactions with J.M., including while J.M. was arrested, which led to the excessive use of force against her.

50. By the foregoing conduct, Officer Pullen denied J.M. the benefit of public services, programs, or activities solely on the basis of her protected disability.

51. As a result of the Defendants' unlawful acts, J.M. suffered physical injury, emotional distress, and other damages.

52. WHEREFORE, Ms. McKenney respectfully prays this Honorable Court for judgement in J.M.'s favor awarding compensatory damages, plus pre-judgment and post-judgment interest; and attorney's fees pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794a (b).

**Count IV**
**42 U.S.C. § 1983: Failure to Train**
(Against the Town of Norway, Seeking Injunctive Relief)

53. Plaintiff, Alicia McKenney, on behalf of J.M., incorporates the allegations contained in paragraphs 1-52, as if fully set forth herein.

54. The Town of Norway had a legal duty to prevent violations of J.M.'s Constitutional rights.

55. The Town of Norway failed to put in place appropriate policies, procedures, supervision, and training to equip SROs stationed in local public schools with the skills and knowledge needed to safely work with students with disabilities, without violating the rights of those students.

56. The Town of Norway knew, or should have known, that this failure to train and supervise was likely to lead to a deprivation of the rights of students with disabilities in public schools.

57. The Town of Norway's failure to train and supervise was a proximate cause of J.M.'s injuries.

58. As a result the Town of Norway's actions, J.M. suffered physical injury, emotional distress, and other harms.

59. WHEREFORE, Ms. McKenney respectfully prays this Honorable Court for an injunction requiring the Town of Norway to implement appropriate policies, procedures, supervisory practices, and training, that will ensure SROs employed by the Town of Norway will be capable of safely providing services to students with disabilities; and attorney's fees pursuant to 42 U.S.C. § 1988.

**Count V**
**5 M.R.S. § 4682: Unlawful Arrest and Excessive Force in Violation of Article I § 5 and 6-A of the Maine State Constitution**
(Against Officer Pullen, Seeking Damages)

60. Plaintiff, Alicia McKenney, on behalf of J.M., incorporates the allegations contained in paragraphs 1-59, as if fully set forth herein.

61. 5 M.R.S. § 4682, the Maine Civil Rights Act, provides a cause of action when a state actor interferes with any right secured by the Maine State Constitution through the use or threat of physical force or violence against a person.

62. Article I, Section 5, of the Maine State Constitution provides that "[t]he people shall be secure in their persons . . . from all unreasonable searches and seizures."

63. Article I, Section 6-A, of the Maine State Constitution provides that "[n]o person shall be

64. deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of that person's civil rights or be discriminated against in the exercise thereof."

65. Officer Pullen was cognizant of these rights when, by her words and acts, she used excessive force to unreasonably arrest J.M. in violation of her Article I § 6-A right to due process and her Article I § 5 right to be free from all unreasonable seizures.

66. As a result of Officer Pullen's violation of J.M.'s rights, J.M. suffered physical injury, emotional distress, and other damages.

67. WHEREFORE, Ms. McKenney respectfully prays this Honorable Court for judgement in J.M.'s favor awarding compensatory and punitive damages, plus pre-judgment and post-judgment interest; and attorney's fees pursuant to 5 M.R.S. § 4683.

**Count VI.**
**14 M.R.S. § 8111(1)(E): Violations of State Tort Law Under the Maine Tort Claims Act**
(Against Officer Pullen, Seeking Damages)

68. Plaintiff, Alicia McKenney, on behalf of J.M., incorporates the allegations contained in paragraphs 1-67, as if fully set forth herein.

69. Officer Pullen, by her words, acts, or omissions, restrained J.M.'s freedom of movement to a confined area such that J.M. was conscious of the restraint.

10

70. Officer Pullen, by her words, acts, or omissions, subjected J.M. to harmful or offensive physical contact.

71. Officer Pullen, by her words, acts, or omission, placed J.M. in fear of offensive bodily contact.

72. Officer Pullen, by her words, acts, and omissions, engaged in conduct that was extreme, outrageous, and intended to cause J.M. severe emotional distress, and which did, in fact, cause J.M. severe emotional distress.

73. The aforesaid acts of Officer Pullen were beyond the scope of her discretion as an employee of the Norway Police Department.

74. As a result of Officer Pullen's conduct, J.M. suffered physical injury, emotional distress, and other compensatory and punitive damages.

75. Officer Pullen's conduct was the direct and proximate cause of J.M.'s injuries.

76. WHEREFORE, Ms. McKenney respectfully prays this Honorable Court for judgement in J.M.'s favor awarding compensatory and punitive damages, plus pre-judgment and post-judgment interest; and attorney's fees.

### Count VII.
### 14 M.R.S. §§ 8104-A(2), 8104-B(3): Negligence Under the Maine Tort Claims Act
(Against the Town of Norway, for Damages)

77. Plaintiff, Alicia McKenney, on behalf of J.M., incorporates the allegations contained in paragraphs 1-76, as if fully set forth herein.

78. The Town of Norway owed a duty to J.M. to ensure her safety at Rowe Elementary, a public building.

79. The Town of Norway knew, or should have known, that Officer Pullen would frequently come into contact with children with disabilities.

80. The Town of Norway created an unreasonable risk to J.M. by failing to adequately train and supervise SROs and other law enforcement officers to accommodate the needs of students with disabilities.

81. By this failure, the Town of Norway breached its duty of care to J.M..

82. These aforesaid acts were the proximate cause of J.M.'s injuries.

83. As a result of the Town of Norway's unlawful acts, J.M. suffered physical injury, emotional distress, and other compensatory and punitive damages.

84. WHEREFORE, Ms. McKenney respectfully prays this Honorable Court for judgement in J.M.'s favor awarding compensatory and punitive damages, plus pre-judgment and post-judgment interest; and attorney's fees.

## JURY TRIAL REQUEST

85. Plaintiff requests a jury trial on all claims in her complaint so triable as of right.

Dated at Portland, Maine, this 22 Day of April, 2025.

ALICIA MCKENNEY, ON BEHALF OF J.M.

By her attorneys,

 /s/ Nealy Fleming
Nealy Fleming, Esq.

HERON LEGAL YOUTH ADVOCACY, PA
107 Congress St.
Portland, ME 0410
Phone: (207) 772-7426
Email:  fleming@heron-legal.com

 /s/ Michael Rogers
Micheael Rogers, Esq.

HERON LEGAL YOUTH ADVOCACY, PA
107 Congress St.
Portland, ME 04101
Phone: (207) 772-7426
Email: rogers@herong-legal.com

  /s/ Christa Vo
Christa Vo, Esq.

MAINE JUSTICE COLLECTIVE
75 Pearl Street, Suite 217
Portland, ME 04101
Phone: (207) 817-2222
Email: christa@mainejusticecollective.com